IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY T. AUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 CV 1981 |
| | ) | |
| OFFICER JEFFREY FORNOFF #192, | ) | MAGISTRATE JUDGE |
| OFFICER ADAM STAPLETON #283, | ) | ARLANDER KEYS |
| OFFICER JOHN BYRNE #312 | ) | |
| OFFICER CARLOS MATLOCK #235, | ) | |
| and CITY OF JOLIET, | ) | |
| an Illinois Municipal | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion and Order**

Plaintiff Anthony Austin filed suit against Defendants the

City of Joliet, Officer Jeffrey Fornoff, Officer Adam Stapleton,

Officer John Byrne and Officer Carlos Matlock based upon a

traffic stop. Specifically, in the First Amended Complaint [23],

Plaintiff seeks damages for violations of his rights under the

Fourth and Fourteenth amendments to the U.S. Constitution and for

violations of Illinois Common Law for the intentional torts of

malicious prosecution, battery, and intentional infliction of

emotional distress. Defendants moved for summary judgment as to

all claims against all parties. For the reasons set forth below,

Defendants' motion for summary judgment [32] is denied.

**I.   Background Facts**

On November 22, 2009, Anthony Austin was at home with his

wife, Christine, and her cousin, Jennifer Sears. (Defs'. R. 56.1

Statement ¶ 1.) Mr. Austin drank 4-5 Mike's Hard Lemonades, an alcoholic drink, at some point on that date; the timing of consumption is disputed. (*Id.*) Mr. Austin got into an argument with his wife. (*Id.* at ¶ 3.) His wife called the police for intervention. (*Id.* at ¶ 4.) The police made a visit to the Austin household, and instructed Christine Austin to allow Anthony Austin to have the car keys and leave. (*Id.*)

Mr. Austin left his home and drove around for 45 minutes before he arrived at a bar named Larsen's Corner. (Defs'. R. 56.1 Statement ¶ 5.) Larsen's Corner is located in Joliet, Illinois. (*Id.* at ¶ 2.) The time at which Plaintiff arrived at the bar is disputed. Plaintiff claims he arrived at the bar at approximately 10:00 p.m. (Pl's. Resp. to R. 56.1 Statement ¶ 2.) Mr. Austin drank a couple of beers and a shot of Rumplemintz at Larsen's Corner. (Defs'. R. 56.1 Statement ¶ 6.) Rumplemintz is a hard liquor. (*Id.*) Mr. Austin met Jeremy Keck at Larsen's Corner and struck up a conversation with him. (*Id.* at ¶ 7.) Plaintiff discovered that Mr. Keck knew his wife. (*Id.* at ¶ 9.) Larsen's Corner closed at 1:30 a.m. (*Id.* at ¶ 10.) Mr. Austin stayed at the bar until right before it closed. (*Id.*)

After closing time, Mr. Austin and Mr. Keck decided to leave Larsen's Corner together and drive to another bar, Jameson's Pub. (Defs'. R. 56.1 Statement ¶ 11.) Mr. Keck drove and Mr. Austin rode in the front passenger seat of Mr. Keck's car. (*Id.*) When

they arrived, Mr. Austin and Mr. Keck discovered that Jameson's Pub was closed. (*Id.* at ¶ 12.) It was decided that Mr. Keck would then drive Plaintiff back to his car at the Larsen's Corner parking lot. (*Id.* at ¶ 13.) Mr. Keck drove down Hammes Street immediately prior to Oneida Street. (*Id.* at ¶ 14.) The Joliet Police Department was conducting a seatbelt safety checkpoint at the intersection of Hammes Street and Oneida Street. (*Id.* at ¶ 15.) Mr. Keck and Mr. Austin came upon the seatbelt safety checkpoint and were stopped by the Joliet Police.

There are significant factual disputes concerning the subsequent sequence of events. Defendants state that neither Plaintiff, nor Mr. Keck, had their seatbelts on when stopped at the checkpoint. (Defs. R. 56.1 Statement ¶ 17.) Mr. Keck admits that he did not have his seatbelt on and testified that Plaintiff did not either. (*Id.*) Plaintiff disputes this assertion, claiming he was wearing a seatbelt. (Pl. Resp. to R. 56.1 Statement ¶ 17.) Defendants claim, and Plaintiff disputes, that while engaging in conversation with Mr. Austin and Mr. Keck, Officer Stapleton illuminated the inside of the vehicle with his flashlight and found drug paraphernalia. (Def. R. 56.1 Statement ¶ 20; Pl. Resp. to R. 56.1 Statement ¶ 20.) At that point, he saw an orange and yellow blown glass pipe, commonly used for smoking marijuana, at the driver's feet. (*Id.*) An officer placed the pipe on top of the car. (*Id.* at ¶ 21.) It is unclear from

3

the testimony exactly what happened to the pipe. (Pl's Add'l R. 56.1 Facts ¶¶ 26-27.) Officer Byrne claims to have destroyed the pipe and Officer Stapleton claims to have given it to Mr. Keck. (*Id.*) In contrast, Plaintiff asserts that no drug paraphernalia was found until after Mr. Keck and Mr. Austin were searched and Mr. Austin was arrested. (*Id.* at ¶¶ 25-26.) He also asserts that the pipe was found by Officer Byrne on the passenger side floor, not on the driver's side. (*Id.* at ¶¶ 25-26.) Mr. Keck admits that a dark colored glass bowl in the shape of a triangle was found in his car and that it belonged to his ex-girlfriend. (Defs'. R. 56.1 Statement ¶¶ 20-21.)

Both Mr. Keck and Mr. Austin were told to step out of the vehicle. (Defs'. R. 56.1 Statement ¶ 22.) Officer Fornoff searched Plaintiff on the passenger side of the vehicle. (*Id.* at ¶ 24.) This pat search lasted less than a minute. (*Id.* at ¶ 28.) After being taken out of the car, Mr. Austin became belligerent and told the Officer that he thought it was "bullshit." (Defs. R. 56.1 Statement ¶¶ 24-27.) While being searched, Mr. Austin argued with the Officer. (*Id.* at ¶ 24.) He told the Officer to search his "nuts" and was saying "stupid ignorant stuff." (*Id.* at ¶¶ 25-26.) Mr. Austin made verbal assaults against the Officer and was disrespectful. (*Id.* at ¶ 25.) Mr. Austin described himself as acting like an "ignorant asshole." (*Id.* at 27.) Plaintiff explained that he was acting

4

in this manner in response to being upset with the way the Officer was treating him. (Pl. Resp. to R. 56.1 Statement ¶¶ 24-27.)

Mr. Keck, witnessing Mr. Austin's behavior, asked Mr. Austin why he was acting this way. (Def. R. 56.1 Statement ¶ 33.) Mr. Austin did not respond to Mr. Keck. (*Id.*) Plaintiff claims he did not hear Mr. Keck. (Pl. Resp. to R. 56.1 Statement ¶ 33.) Mr. Keck was cooperative with the Officers. Defendants claim that Mr. Austin, on the other hand, kicked off his shoes and sarcastically remarked that the Officers missed a spot. (Def. R. 56.1 Statement ¶ 30.) Plaintiff claims he stepped out of his shoes. (Pl. Resp. to R. 56.1 Statement ¶ 30.) As Officer Fornoff bent down to retrieve Mr. Austin's shoes, he claims that Mr. Austin started walking towards him. (Def. R. 56.1 Statement ¶ 31.) Officer Fornoff testified that he rose up and pushed Mr. Austin back, telling him to get to the back of the car. (*Id.*) Defendants claim that Mr. Austin continued his violent actions moving towards Officer Fornoff, this time clenching his fists and running at Officer Fornoff, resulting in Officer Stapleton tackling Mr. Austin to prevent the imminent attack upon Officer Fornoff. (*Id.* at ¶¶ 31-35.) Plaintiff disputes this version of the events. Plaintiff claims that he did not clench his fists or make any threatening or menacing moves toward any officers. (Pl. Resp. to R. 56.1 Statement ¶ 31.)

5

Defendants assert that Mr. Austin then stumbled, after Officer Stapleton ran into him, causing him to fall into the push bumper of Officer Stapleton's squad car. (Def. R. 56.1 Statement ¶ 38.) In contrast, Mr. Austin testified that, during the search, he was shoved by Officer Fornoff and struck his back against Mr. Keck's car. (Pl's Add'l R. 56.1 Facts ¶ 10.) He also asserts that the Officers' testimony supports his version of events that he was "slammed" to the ground near Mr. Keck's car and did not hit his head at that time. (Pl. Resp. to R. 56.1 Statement ¶¶ 38-40.) Defendants state that Mr. Austin was taken to the ground with Officer Stapleton landing on Mr. Austin, and that Mr. Austin landed head first on the ground. (Def. R. 56.1 Statement ¶¶ 39-40, 43.)

Officer Stapleton testified that, now on the ground, he tried to turn Mr. Austin onto his stomach and that Mr. Austin was still fighting with him, grabbing his coat, jacket, and safety vest. (Def. R. 56.1 Statement ¶¶ 44-45.) Plaintiff then doubled up his fists and was going to hit Officer Stapleton, at which point Officer Stapleton hit Plaintiff in his left eye. (*Id*. at ¶ 46.) In contrast, Plaintiff denies that he fought with Officer Stapleton or that Officer Stapleton punched him at that time, stating that there was not much struggle on the ground and that he was handcuffed easily. (Pl. Resp. to R. 56.1 Statement ¶ 44; Pl's Add'l R. 56.1 Facts ¶ 13.) Plaintiff asserts that Detective

Matlock witnessed the struggle between Officer Stapleton and Mr. Austin, but testified that he did not see Mr. Austin on his back or throwing punches. (Pl's Add'l R. 56.1 Facts ¶¶ 11-12.) Mr. Keck testified that he heard another officer running up to assist Officer Stapleton while yelling "give me your hands" and "put your hands behind your back". (Def. R. 56.1 Statement ¶ 47.) Defendants claim it took three officers to cuff Mr. Austin, while Mr. Austin states that one officer cuffed him easily. (*Id.* at ¶¶ 47-49.) Plaintiff adds that he was on his stomach, not his back, after being thrown to the ground. (*Id.* at ¶ 45; Pl's Add'l R. 56.1 Facts ¶ 11.)

Defendants assert that Plaintiff was picked up off the ground by one officer and then taken to a squad car by Officers Stapleton and Fornoff. (Def. R. 56.1 Statement ¶ 51, ¶54; Defs' Resp. to Pl's Add'l R. 56.1 Facts ¶ 15.) Plaintiff responds that Mr. Keck's testimony shows that he saw two officers yank Mr. Austin up to his feet by the arms while he was handcuffed, while Mr. Austin asked the Officers what he had done and why he was being arrested. (Pl's Add'l R. 56.1 Facts ¶ 15.) Both parties agree that the "scuffle" happened very quickly. (*Id.* at ¶ 22;Def. R. 56.1 Statement ¶ 37.)

At the time that Mr. Austin was put in the squad car, Defendants assert that the evidence supports that Mr. Austin had injuries to the left side of his face and what looked like road

rash on his forehead. (*Id.* at ¶ 52.) Mr. Austin responds that
no injuries were seen on his face at that time. (Pl. Resp. to R.
56.1 Statement ¶ 52; Pl's Add'l R. 56.1 Facts ¶ 19.) Mr. Keck
and Detective Matlock did not see any injuries to Plaintiff's
face before he was taken towards the squad car. ((Pl. Resp. to
R. 56.1 Statement ¶ 52.) The first time that Mr. Keck saw any
injuries on Mr. Austin was when he was shown photographs of Mr.
Austin following the incident, when Mr. Keck went to the police
station. (Pl's Add'l R. 56.1 Facts ¶ 20.)

Plaintiff testified that Officer Stapleton punched him in
the back of the head eight or nine times as he was being placed
in the car, leaving bumps all over his head. (Def. R. 56.1
Statement ¶ 51, ¶ 55.) Officer Stapleton denies this and
testified that Mr. Austin would not get in the squad car, so he
had to push him in the car. (*Id.* at ¶ 58.) Plaintiff asserts
that he was pushed into the squad car at the point it "seemed he
was about to get in." (Pl. Resp. to R. 56.1 Statement ¶ 58.)
Plaintiff testified that he called the Officer a "bitch," while
he was seated in the back seat of the passenger side of the squad
car, at which point Officer Stapleton punched the Plaintiff in
the left eye. (Def. R. 56.1 Statement ¶ 56, Pl. Resp. to R. 56.1
Statement ¶ 56.) Mr. Austin testified that, after being struck
in the face while in the squad car, he was in a daze. (Pl's
Add'l R. 56.1 Facts ¶ 17.)

Police photographs were taken of Mr. Austin's injuries. Plaintiff's wife also took photographs which depict his injuries. (Def. R. 56.1 Statement ¶ 62.) Mr. Austin had cuts and bruising on the left side of his face when he arrived at the police station. (Mot. For S.J. at Ex. 7.)

After Mr. Austin was placed in the squad car, Mr. Keck was escorted by Detective Matlock to his car. (Pl's Add'l R. 56.1 Facts ¶ 21.) Mr. Keck testified that, when he was being escorted to his car, the squad car door was open, but he did not see Mr. Austin's injuries at that time. (*Id.* at ¶ 19.) According to Plaintiff, this is the point in time when an officer found the drug paraphernalia.

Mr. Keck testified that the police officers' demeanor toward him changed after Mr. Austin was placed under arrest from aggressive to very nice. (*Id.* at ¶28.) Officer Stapleton had run Mr. Keck's license and it had come back invalid. (*Id.* at ¶ 29.) He issued citations to Mr. Keck for driving without a valid driver's license and for not wearing a seat belt. (*Id.*) After the arrest of Mr. Austin, the Officers allowed Mr. Keck to leave the checkpoint by driving his car. (*Id.* at ¶¶ 29-30.) The Officer told Mr. Keck to go directly home. (*Id.* at ¶ 30) At some point before Mr. Keck left, an officer radioed for a tow of Mr. Keck's vehicle, but that request was later cancelled. (*Id.* at ¶ 39.)

According to the police report from the incident, Mr. Austin was charged with aggravated assault and resisting a police officer. (*Id.* at ¶ 34.) Mr. Austin was told at the police station that the Officers would not show up at the scheduled court date on December 15, 2009. (*Id.* at ¶ 32.) On December 15, 2009, Mr. Austin went to court and there was no complaint filed against him; his case was dismissed. (*Id.* at ¶ 33.)

## II. Standard of Review

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Though this standard places the initial burden on the moving party, once it has met this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but instead must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). When deciding whether summary judgment is proper, the Court must accept the nonmoving party's evidence as true and draw all inferences in favor of that party, here the Plaintiff, Mr.

Austin. *See Anderson*, 477 U.S. at 255.

In order to successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586. (1986). Rather, they must come forward with specific facts showing that there is a genuine issue for trial. *Id*. at 587. The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F. 3d 620, 628 (7th Cir. 2006).

## III. Discussion

Plaintiff divided his First Amended Complaint into ten counts against the four Defendant Officers and the City of Joliet: §1983 Fourth Amendment violation for unlawful detention and false arrest (Count I); §1983 Fourth Amendment violation for excessive force (Count II); §1983 Fourth Amendment violation for failure to intervene (Count III); §1983 Fourth Amendment violation for malicious prosecution (Count IV); §1983 Fourteenth Amendment violation for excessive force (Count V); §1983 Fourteenth Amendment violation for excessive force - failure to intervene (Count VI); and state law malicious prosecution (Count VII), battery(Count VIII), and intentional infliction of emotional distress (Count IX). Finally, Mr. Austin alleged

indemnification against the City of Joliet (Count X). Defendants move for summary judgement on all of these claims.

### A. Count I - Unlawful Detention and False Arrest in Violation of the Fourth Amendment

In Count I, Plaintiff claims that the individual Police Officers unlawfully detained and arrested him, manufactured and fabricated evidence against him, and failed to intervene while his constitutional rights were bing violated. Defendants argue that this claim should be dismissed, because "the evidence clearly shows that the Defendant Police Officers lawfully detained and arrested the Plaintiff." (Mem. at 2.) Defendants argue that there was no unlawful detention based on the deposition testimony of Mr. Keck, which establishes that both Mr. Keck and Mr. Austin were traveling in a vehicle without wearing seatbelts, in violation of 625 ILCS 5/12-603.1 and that there was drug paraphernalia in the vehicle. Defendants add that Mr. Austin's threatening actions and belligerent behavior, after he got out of the vehicle, warranted his arrest.

Plaintiff responds that he was initially taken out of the vehicle for no reason. He alleges that he was wearing his seatbelt and that there was no drug paraphernalia in the vehicle in plain view. Mr. Keck did admit that a pipe was found in the car. However, there is a question as to the timing of the search of Mr. Austin and the discovery of the drug paraphernalia. As for Mr. Austin's arrest for aggravated assault and

12

resisting/obstructing a police officer, Plaintiff testified that he did not ball up his fists or act in an aggressive manner towards any officer. (Resp. at 7.) Plaintiff asserts that he did not make contact with the Officers and did not resist being handcuffed. The evidence, to date in this case, shows that the events at issue happened very fast, within minutes, and that even though multiple officers and Mr. Keck were at the scene, many of them testified that they did not see the key events or could only see portions of the events.

In determining whether a genuine issue of material fact exists, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Drawing justifiable inferences in Mr. Austin's favor, there is a question of fact as to whether the Defendants had probable cause to arrest and detain him. Therefore, Defendants' motion for summary judgment as to Count I is denied.

### B.   Conspiracy Under 42 U.S.C § 1983

In Counts I, II, IV, and V, Plaintiff has pleaded both individually as to each Defendant Officer, and under a theory of conspiracy by the Officers. (See First Amended Complaint [23].) To establish a *prima facie* case of civil conspiracy under § 1983, Mr. Austin must allege that the Officers had an express or

implied agreement to deprive him of his constitutional rights, and must further allege an actual deprivation of his rights arising from overt acts in furtherance of the agreement. See *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Although a § 1983 conspiracy claim "certainly may be established by circumstantial evidence ... such evidence cannot be speculative." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

Taken in a light most favorable to Mr. Austin, Mr. Austin asserts that the following facts are indications that a conspiracy took place: that certain officers deny seeing Officer Stapleton punch Plaintiff in the squad car; that Officers Byrne and Stapletion fabricate that Plaintiff balled up his fists and resisted arrest; that all the Officers fabricate that the drug paraphernalia was in plain view, and contradict each other on the pipe's location and ultimate disposition; that the Officers let an unlicensed driver leave the scene driving his own vehicle after a tow truck was called; and that certain facts regarding the drug paraphernalia and injuries to Mr. Austin were left out of the police report. The Court also notes that Mr. Keck testified that the Officers' demeanor changed after Mr. Austin was taken into custody and that Mr. Austin testified that the Officers told him no one would show up at his court date. The undisputed facts in this case are few and far between. Due to the evidence noted above and the number of inconsistencies in the

14

parties' testimony, it should be left to the trier of fact to determine whether Plaintiff's evidence meets the *prima facie* requirements of civil conspiracy.  Defendants' arguments that Counts I, II, IV, and V of the First Amended Complaint should be dismissed because Plaintiff failed to allege conspiracy by the Officers is denied.

### C. Count II - Use of Excessive Force in Violation of the Fourth Amendment

In Count II of Mr. Austin's Amended Complaint, he alleges that the Officers used excessive force to effectuate his arrest, in violation of the Fourth Amendment.  Defendants argue that Mr. Austin's resistance made their use of force objectively reasonable.  "Determining whether or not a police officer has unreasonably seized a person using excessive force involves balancing the nature and quality of the intrusion on the individuals Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).  To determine whether the force used to effect an arrest is unreasonable, a court must examine the "totality of circumstances" surrounding the incident. *Id*. at 8-9.  The Fourth Amendment's reasonableness test is an objective one. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ." *Id*.  Courts should consider factors such

15

as "[t]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Plaintiff alleges that the injuries he sustained were excessive in light of the fact that he was being apprehended in response to a seatbelt checkpoint and he was easily handcuffed. Plaintiff claims, and Defendants deny, that Plaintiff was struck eight to nine times in the back of the head and punched in the eye by Officer Stapleton after being handcuffed. Defendants assert that the force used was reasonable, given Mr. Austin's belligerent behavior. The parties disagree as to whether Mr. Austin threatened the Officers and whether Mr. Austin resisted arrest. After making all reasonable factual inferences in Mr. Austin's favor, as is appropriate in a summary judgment setting, a reasonable jury could determine that the force used by the Officer to effect Mr. Austin's arrest was excessive in light of the circumstances. The Officers were responding to a traffic stop, and the events did result in injury to Plaintiff.

Defendants also argue that the photographs taken immediately after this incident do not support Plaintiff's version of the events. Defendants contend that Plaintiff's version of the events is "nearly impossible," because he could not have received the type of injuries depicted in the pictures if he was seated in

the passenger side of the squad car and the Officer who struck him was standing outside the vehicle. This is a theory to be presented to the trier of fact. At this point, given the inference of favor to Mr. Austin's testimony, this argument only creates a genuine issue of material fact.

Next, Defendants speculate that Plaintiff was too intoxicated during the traffic stop to remember the events or that he concocted the story that he was in the handcuffs before he was struck. (Mem. at 6.) However, these arguments are theories and the evidence presented sets forth two very different sets of events. Given the significant factual disputes surrounding the circumstances of Mr. Austin's arrest, Defendants' motion for summary judgment as to Count II is denied. The Court cannot hold as a matter of law that the force used was constitutionally reasonable.

### D. Count III - Failure to Intervene in Violation of the Fourth Amendment

In Count III, Mr. Austin alleges that the Officers failed to intervene to prevent other officers from infringing on his constitutional rights. To establish a claim for failure to intervene, a plaintiff must show that the officers had reason to know that a constitutional violation had been committed by another law enforcement official and that the other officers had a realistic opportunity to intervene to prevent the harm from occurring. *Windle v. City of Marion*, 321 F. 3d 658, 664 (7th Cir.

2003). Defendants argue that none of the Officers' conduct violated constitutional standards, and that therefore, the Officers cannot be held liable for failure to intervene. There is consistent evidence that Plaintiff was taken to the ground and that he was struck by an Officer. Therefore, if the arrest of Plaintiff is found to be unlawful or that any officer used excessive force, the other Officers may have had a duty to intervene. Since there is a question of fact as to the actions taken by the Officers and whether they were reasonable under the circumstances, Defendants' argument that none of the Officers' conduct violated constitutional standards fails.

In the alternative, Defendants argue that, since this incident happened quickly, the Officers did not have a reasonable opportunity to intervene. As to the specific timing and/or the Officer's availability to respond, a genuine issue of material fact exists making it a question of fact for the trier of fact. Defendant's motion for summary judgment as to Count III is denied.

**E.    Count IV - Malicious Prosecution in Violation of the Fourth Amendment**

To state a claim for malicious prosecution under 42 U.S.C. §1983, a plaintiff must demonstrate that he has satisfied the requirements of a state law cause of action for malicious prosecution, that the malicious prosecution was committed by state actors and that he was deprived of liberty. *Smart v. Bd.*

*of Trustees of the Univ. of Illinois*, 34 F.3d 432, 434 (7th Cir. 1994). The existence of probable cause to arrest acts as a complete defense to an action for malicious prosecution. *Ely v. National Supermarkets Inc.*, 102 ILL. Dec. 498, 502 (1986). Defendants argue that finding drug contraband in a vehicle is probable cause to arrest the occupants of the vehicle. Plaintiff responds that he was not charged with possession of drug paraphernalia and "probable cause as to one charge will not bar a malicious prosecution claim based on a second distinct claim." *Holmes v. Village of Hoffman Estates*, 511 F. 3d 673, 682 (7th Cir. 2007); (Response at 14.) In addition, Plaintiff argues that the drug paraphernalia was discovered after his arrest.

Defendants also contend that they had probable cause that Plaintiff committed an assault because he "clenched his fists and moved towards a police officer." Mem. at 7. However, these facts are disputed. "A jury must determine whether probable cause existed where the facts alleged to provide probable cause ... are in dispute." *Thurman v. Village of Hazel Crest*, 570 F. Supp. 2d 1019, 1027 (N.D. Ill. 2008). Therefore, Defendants' motion for summary judgment as to Count IV is denied.

### F. Count V - Excessive Force in Violation of the Fourteenth Amendment

The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham v.*

*Connor*, 490 U.S. 396 (1989). Defendants argue for summary judgment on Count V based on their assertions that none of the alleged battery occurred after Plaintiff was placed into custody. There were five witnesses in addition to Plaintiff present at the subject incident: The four Police Officers and Mr. Keck. Defendants argue that none of those five people will corroborate Plaintiff that he was punched eight to nine times in the back of the head and once in the left eye by Officer Stapleton while he was getting into the squad car and then seated in the squad car. (Reply at 9.) Plaintiff argues that both Mr. Keck and Detective Matlock testified that they saw no injuries to his face prior to being taken to the squad car. Defendants attribute this to the incident occurring around 2:00 a.m. and it thus being dark and the positions and distances of these witnesses compared to Plaintiff. There is a genuine issue of material fact here as to the sequence of events and whether Plaintiff was detained at the time he was struck. Defendants' motion for summary judgment as to Count V is denied.

### G.   Count VI - Excessive Force (Failure to Intervene) in Violation of the Fourteenth Amendment

In support of their argument that summary judgment should issue in their favor as to Count VI, Defendants again argue that Plaintiff could not have had the injuries he sustained in the manner he testified to, and in the alternative, that the Officers did not have the opportunity to intervene. Defendants' motion

20

for summary judgment as to the violation of Plaintiff's Fourteenth Amendment rights is denied for the same reasons that their motion for summary judgment on Counts II and III are denied.

### H. Count VII - State Law Claim for Malicious Prosecution

Defendants' motion for summary judgment as to the state law claim for malicious prosecution, Count VII, is denied for the same reasons that their motion for summary judgment for the related federal law claim is denied.

### I. Count VIII - State Law Claim for Battery

Battery, in violation of 720 ILCS 5/12-3, contains the following elements: "(a) a person commits battery if he intentionally or knowingly without legal justification and by any means (1) causes bodily harm to another individual, or (2) makes physical contact of an insulting or provoking nature." Plaintiff claims that he was the recipient of two batteries at the hands of members of the Joliet Police Department. First, the shove in the chest by Officer Fornoff, and second, the punch in the face by Officer Stapleton. (Response at p. 16.)

Defendants argue that Officer Stapleton was the only Officer that caused an injury to Plaintiff and that he was justified in his actions. The facts surrounding which Officer caused the injury and the force used are in dispute, causing a genuine issue of material fact. Defendants' motion for summary judgment as to

Count VIII is denied.

**J.  Count IX - Intentional Infliction of Emotional Distress**

To state a claim under Illinois law for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Wardell v. City of Chicago*, 75 F.Supp.2d 851, 857 (N.D. Ill. 1999)(internal citations omitted).  For purposes of a claim for intentional infliction of emotional distress, conduct is extreme and outrageous only if it is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Id.*  Defendants argue that there is no evidence that Plaintiff suffered any emotional distress as a result of this incident.  (Mem. at p. 10.)

Plaintiff argues that the conduct in this case "goes beyond all possible bounds of decency" because, as he asserts, he was struck while handcuffed and seated in the squad car.  (Response at p. 17.)  Plaintiff claims he suffers from extreme emotional distress, including fear of retaliation by the Joliet Police, fears of being pulled over and of police in general, which cause him anxiety.  It is noted that Defendants object to Plaintiff's

22

May 16, 2011 Affidavit stating that he suffered emotional distress. However, Defendants had an opportunity to respond to the information included in the affidavit in their Reply Brief, but did not. Accepting Plaintiff's evidence as true and drawing all inferences in his favor, the Court finds a genuine issue of material fact for trial. Defendants' motion for summary judgment as to Count IX is denied.

### K.   Count X - Indemnity

Illinois law directs local public entities to pay any tort judgment or settlement for which it or an employee while acting within his scope of employment is liable. 745 ILCS 10/9-102 (West 2009). It is not disputed that Defendant Officers were acting at all times within the scope of their employment. Therefore, since summary judgment was not granted in favor of Defendants as to Counts I-IX, Defendants' motion for summary judgment as to Count X is denied.

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is denied.


Date: September 30, 2011     E N T E R E D:

_Arlander Keys_
_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT